In the Matter of FLUSHING HOSPITAL AND DISPENSARY, Respondent. CHARLES H. CAMPBELL et al., Appellants; L. GALE HUNTER et al., Respondents.

Argued March 5, 1942; decided April 23, 1942.

*George Kent Weldon* and *William A. Michel* for appellants• The lapse of eight years before objecting to the validity of the 1933 by-laws is untimely and, therefore, any invalidity is waived. (*Matter of George* v. *Holstein-Friesian Assn.*, 238 N. Y. 513.) The amendments to the by-laws adopted at the March 3, 1941, meeting pursuant to article 5 of the by-laws of 1933, are wholly reasonable and consistent with applicable statutory law. (*Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159; *Matter of Farrell*, 205 App. Div. 443.) The amendments to the by-laws having been properly adopted at the March, 1941, meeting in accordance with the provisions of the existing by-laws, the election of the trustees and officers was valid. (*Lewis* v. *Matthews*, 161 App. Div. 107; *Matter of George* v. *Holstein-Friesian Assn.*, 238 N. Y. 518.)

*E. Douglas Hamilton* and *E. Crosby Kindleberger* for Flushing Hospital and Dispensary, respondent. The amendments to the by-laws purportedly passed at the meeting of March 3, 1941, increasing the board, permitting nominations from the floor, authorizing the election of officers by members, and authorizing the president to fill vacancies in the board, were illegal and void. (*Matter of Sea Gate Assn.*, 241 App. Div. 699; *Matter of Mount Sinai Hospital*, 250 N. Y. 103; *Cartan* v. *Father Matthew United Benevolent Society*, 3 Daly, 20; *People ex rel. Gray* v. *Medical Society of the County of Erie*, 24 Barb. 570; *People ex rel. Muir* v. *Throop*, 12 Wend. 183; *Weiler* v. *Equitable Aid Union*, 92 Hun, 277; *Grossmeyer* v. *District No. 1 Independent Order B'nai Berith*, 34 Misc. Rep. 577; 70 App. Div. 90; 174 N. Y. 550; *Pulford* v. *Fire Department of Detroit*, 31 Mich. 458; *People* v. *Crockett*, 9 Cal. 112; *Matter of Empire State Supreme Lodge*, 118 App. Div. 616.) The election at the meeting of March 3, 1941, was illegal. (*Matter of George* v. *Holstein-Friesian Assn.*, 238 N. Y. 513; *Matter of Fierman* v. *Rose*,

175 Misc. Rep. 102; *Mitchell* v. *Forest City Printing Co.*, 107 Misc. Rep. 709; 187 App. Div. 743; *Matter of Hammond Light & Power Co.*, 131 Misc. Rep. 747; 224 App. Div. 684.)

*John Holley Clark, Jr.*, and *E. Crosby Kindleberger* for L. Gale Hunter et al., respondents. The courts below were right in holding that the amendments purportedly adopted at the meeting on March 3, 1941, were improper and illegal. They were equally sound in declaring unreasonable and void on its face the amendatory provision of the 1933 by-laws and in holding that the amendatory provision of the 1933 by-laws was not itself properly or legally adopted. (*Cartan* v. *Father Matthew United Benevolent Society*, 3 Daly, 20; *Matter of Mount Siani Hospital*, 250 N. Y. 104; *People ex rel. Muir* v. *Throop*, 12 Wend. 183; *People ex rel. Gray* v. *Medical Society of the County of Erie*, 24 Barb. 574; *Weiler* v. *Equitable Aid Union*, 92 Hun, 277; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159; *Matter of Empire State Supreme Lodge of D. & H.*, 118 App. Div. 616; *Danzig•*v. *Lachs*, 235 App. Div. 189; *Matter of Fierman* v. *Rose*, 175 Misc. Rep. 102.)

*Henry C. Frey* for Charles H. Roberts et al., interveners-respondents. The plan for the administration of the hospital as provided by the by-laws was definite, comprehensive and fair. (*Matter of Young* v. *Jebbett*, 213 App. Div. 774; *Matter of Bogart*, 215 App. Div. 45; *Matter of O'Shea [Sea Gate Assn.]*, 241 App. Div. 699.) The purported election of pseudo trustees not nominated according to the by-laws was such a distortion of the plan of the institution as could ultimately destroy it. (*Cartan* v. *Father Matthew United Benevolent Society*, 3 Daly, 20.) The nominees of the newcomers were never eligible for election as trustees. (*Matter of O'Shea [Sea Gate Assn.]*, 241 App. Div. 699; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159; *Matter of Mount Siani Hospital*, 250 N. Y. 103; *Weiler* v. *Equitable Aid Union*, 92 Hun, 277.)

LEHMAN, Ch. J. The notice of annual meeting of Flushing Hospital and Dispensary Corporation to be held in March, 1933, stated: " The annual meeting of the Flushing Hospital and Dispensary Corporation will he held in the board room of the hospital on Monday, March 6th, 1933 at 8 P. M. for the election of six

trustees, the adoption of the complete new set of by-laws and for such other business as may properly be brought before the meeting." The minutes of the meeting show that " a resolution was then unanimously adopted that the existing by-laws of the hospital be repealed and that the new by-laws be officially adopted in their place." The affairs of Flushing Hospital and Dispensary have been administered since that date in accordance with the " new by-laws " thus " officially adopted," with such amendments as may have been adopted thereafter. The validity of these by-laws was never challenged by any member until after the annual meeting held in 1941. The superseded by-laws had a provision that they might be amended " by a two-thirds vote of those present at any annual or special meeting of this corporation, provided notice of such amendment be published with the call for meeting." In the new by-laws there was a provision that the by-laws might be amended by similar vote " although the notice of such meeting shall not have contained any reference to such proposed amendment."

The new by-laws further provided, among other things, that " the Board of Trustees shall consist of eighteen members of the corporation, and shall be divided into three classes of six each [increased to seven each by an amendment adopted at the annual meeting held in 1937]; each class to serve for a term of three years or until the election of their successors." A committee appointed by the board of trustees was empowered by the by-laws to nominate persons for trustees and to file a list of the persons nominated with the secretary of the corporation, not less than three weeks before the annual meeting. Then, in accordance with the by-laws, " Nominations for the office of Trustee in addition to the names certified by such Nominating Committee may be filed with the Secretary of the corporation not less than two weeks before the annual meeting, provided such nominations be in writing and endorsed by not less than fifteen members of the corporation. * * * No person, except those whose names have been filed and posted as provided in this subdivision, shall be eligible for election."

A nominating committee appointed in accordance with the by-laws filed the list of the persons it had nominated for trustees more than three weeks before the annual meeting held in March, 1941

No other nominations were filed. Thus under the existing by-laws the election of the persons nominated by the committee was assured. Nevertheless, a group of members of the corporation, not satisfied in all respects with the manner in which the affairs of the hospital were conducted, attended the meeting intent upon electing other persons as trustees who would thereafter control its affairs. Since they could not do so under the existing by-laws, they planned, to carry out their purpose, to propose amendments to the by-laws which would provide that nominations for the office of trustee might be made " at any annual meeting of the Corporation commencing with the *annual meeting of March, 1941*, said nominations to have equal standing with nominations already made to be voted on at said meeting," and that the board of trustees be increased from twenty-one members to twenty-seven members — fourteen to be elected at the March, 1941, annual meeting. Other amendments were at the same time proposed which were calculated to make more secure and complete the control of the management of the affairs of the corporation by the fourteen members of the board to be elected at the annual meeting in 1941, and to make more difficult, if not impossible, any further amendment of the by-laws through which control might be wrested from them.

Annual meetings of old-established benevolent corporations, where only one group of candidates has been nominated and no others' can be nominated, where there has been no public criticism of the management, and where there is no reason to expect that any controversial resolutions will be proposed, are often attended by few members. Under the by-laws of the hospital corporation seven members are sufficient to constitute a quorum at an annual meeting. The by-law which provided that nominations must be made and filed at least two weeks before an annual meeting was calculated to give to the members of the corporation the opportunity to reject candidates not approved by them. The proposed amendment of the by-laws was calculated to deprive members absent from the annual meeting of the corporation of opportunity to approve or disapprove candidates, though their failure to attend may have been due to approval of the candidates who had been nominated and justified reliance upon the provisions of the by-laws which barred other nominations. The amended by-laws were proposed in

the expectation that through them the group who came prepared to propose and pass them would gain control of the election and, through trustees then elected, would control the affairs of the hospital. The expectation of control of the election was realized. Without protest or dissent the amended by-laws were adopted; new nominations were made at the meeting and the persons so nominated were elected as trustees and then constituted a majority of the trustees.

Upon the application of a member of the corporation claiming to be aggrieved by the election, an order was entered after a hearing at Special Term, adjudging " illegal, invalid and void " the provision of the " new by-laws " adopted at the annual meeting in 1933 which authorized future amendment of the by-laws at any meeting of members " although the notice of such meeting shall not have contained any reference to such proposed amendment." It necessarily followed that the amendments adopted in 1941 were also illegal, invalid and void and that the election of persons nominated at that meeting must be vacated or disregarded. The order so provides. It contains also other provisions to which brief reference will be made hereafter.

The " new by-laws " adopted in 1933 are void, it is said, in so far as they amend the old by-laws because no sufficient notice of the proposed amendments was given. The general notice that " new by-laws " would be proposed was, it is said, insufficient. Even if it were true that the new by-laws were adopted without proper notice they would still be valid, if all the members of the corporation waived such notice. For seven years the affairs of the corporation were, as we have said, administered in accordance with these " new by-laws " and at no time did a member protest or challenge their validity. Waiver of irregularity is, in these circumstances, the reasonable implication which must be drawn from failure to object. (*Matter of George* v. *Holstein-Friesian Association*, 238 N. Y. 513.) Nor can we say that on other grounds the amended by-law, dispensing with the requirement of notice, is void. A provision in the by-laws authorizing amendment at a meeting duly called though no previous notice of the proposed amendment was given may be unwise; that may depend on varying circumstances. A court may not say in this case that it is so

unreasonable or unfair that it is beyond the power of the members to adopt, especially where no member has objected.

Other considerations, nevertheless, sustain the construction of the courts below that the amendments adopted at the meeting in 1941 are void and that the election held pursuant thereto must be set aside. The method used in the adoption or amendment of a by-law may be legal, but the courts are not constrained to sanction an unlawful result though achieved by legal means. Neither the officers nor a majority of the members of a benevolent corporation may exercise the powers confided in them in manner which is unfair, oppressive or manifestly detrimental to the interests of the corporation. Changes in by-laws calculated to give to a group an unreasonable or unfair advantage, which are not adapted to the purposes of the corporation, are void. Implicit in all powers conferred upon the officers or the members of a benevolent association or corporation formed for communal service is the qualification that the power shall be exercised in manner calculated to promote the interests and purposes of the corporation. (*People ex rel. Muir* v. *Throop*, [1834] 12 Wend. 183; *People ex rel. Gray* v. *Medical Society*, 24 Barb. 570; *Weiler* v. *Equitable Aid Union*, 92 Hun, 277.)

Measured by such standards the challenged amendments to the by-laws are patently invalid. That is true though the group which by amendment to the by-laws sought to control the election and thereafter to control the affairs of the corporation may have acted with unselfish motives and in the belief that the new directors would promote the best interests of the corporation and the community. It is true because the amendment of the by-laws was an essential step in a plan conceived and carried out for the purpose of unfairly and unreasonably depriving other members of the opportunities assured to them by the existing by-laws to approve or reject candidates for office after the members had received notice of all nominations. That renders all the amendments invalid though perhaps some amendments might have been valid if they had not been proposed and passed as indivisible parts of a single plan.

The order, made upon the application of the petitioner, set aside the invalid election but did not provide for a new election by the members of the corporation. Instead it declared that three of the

candidates who had been nominated by the committee were elected though they had not received a majority of the votes cast and that the board of trustees was authorized to· fill the vacancies caused by the withdrawal of the names of four candidates similarly nominated.

There may be doubt whether the court had power in a proceeding initiated under section 25 of the General Corporation Law (Cons. Laws, ch. 23) to confirm the authority of the board of trustees to fill the four vacancies. The persons chosen were at least the *facto* officers but their successors must be chosen at the next annual election at which all vacancies then existing must be filled.

The orders should be modified to provide for such election at the next annual meeting and by striking out the adjudication that the amendment to the by-laws· made at the annual meeting of 1933 is invalid, and as so modified affirmed, with one bill of costs to the respondents. (See 288 N. Y. 735.)

LOUGHRAN, FINCH, RIPPEY, LEWIS ,and DESMOND, JJ., concur; CONWAY, J., taking no part.

Ordered accordingly.