■ JOSEPH D. TATKO, Appellant, v SHELDON SLATE PRODUCTS COMPANY, INC., et al., Defendants, and JOHN TATKO, JR., et al., Respondents. [769 NYS2d 626]—

Rose, J. Appeal from an order of the Supreme Court (Moynihan, Jr., J.), entered August 23, 2002 in Washington County, which, inter alia, granted a motion by defendants John Tatko, Jr. and Beverly Tatko for summary judgment dismissing the complaint against them.

Plaintiff, a minority shareholder in two closely-held family corporations, brought this individual and derivative action against the corporations, his brother, John Tatko, Jr., and his brother's wife, Beverly Tatko, to recover money damages for their alleged fraud and self-dealing. Plaintiff, his brother and their mother, Edna Tatko, are the only shareholders of defendant Sheldon Slate Products Company, Inc., each holding less than 50%.[1] Sheldon, in turn, owns a majority of the shares of Tatko Brothers Slate Company while plaintiff and his brother

---

1. The record indicates that plaintiff owned 20.25%, Edna Tatko owned 30% and John Tatko, Jr. owned 49.75% of Sheldon's shares.

own the remaining shares. Plaintiff alleges that from 1990 to 2001, John Tatko, Jr. and Beverly Tatko (hereinafter collectively referred to as defendants), acting as the only directors of the corporations and apparently with Edna Tatko's cooperation or acquiescence, failed to give notice of annual shareholder meetings, conduct formal shareholder voting or pay dividends, and paid excessive corporate bonuses to themselves and others.[2]

Defendants moved for summary judgment dismissing the complaint on the grounds that plaintiff waived his claims by failing to object to the actions taken by the corporations' directors, there is no proof of fraud or waste, and any claims arising more than three years before commencement of the action are barred by the statute of limitations. In granting defendants' motion, Supreme Court ruled that the record is replete with evidence of plaintiff's waiver and devoid of evidence of fraud. Plaintiff now appeals and we affirm.

Turning first to the issue of whether plaintiff's claims are barred by the statute of limitations, we find that most of them allege conversion of corporate assets, a cause of action subject to a three-year limitations period (*see* CPLR 214; *Cialeo v Mehlman*, 210 AD2d 67, 68 [1994]). To the extent that plaintiff alleges a more general breach of fiduciary duty, such claims would fall under either a three-year or six-year limitations period, depending on the nature of the relief sought (*see* CPLR 214 [4]; *Loengard v Santa Fe Indus.*, 70 NY2d 262, 266 [1987]; *Yatter v William Morris Agency*, 256 AD2d 260, 261 [1998]). Because plaintiff's claim effectively seeks only money damages through recoupment of past bonuses, the applicable limitations period is three years, precluding plaintiff's challenges to corporate expenditures made prior to November 14, 1997.

Further, inasmuch as plaintiff was aware that bonuses were being given each year and his lack of knowledge of the specific amounts was a result of his own lack of diligence, we are unpersuaded by his argument that a discovery accrual rule should be applied to his earlier claims (*see* CPLR 203 [g]; 213 [8]). Nor do we find any evidence in the record supporting a claim in fraud, which would have a six-year limitations period (*see* CPLR 213), beyond the mere fact that defendants awarded bonuses to themselves.

Turning next to the issue of waiver, we agree with Supreme Court's conclusion that plaintiff's claims concerning the bonuses

---

**2.** Beginning with the annual shareholder meeting of the corporations in June 2001, plaintiff and his mother, through their ownership of a majority of the shares of Sheldon, assumed control of the corporations, conducted elections of officers and directors and significantly reduced the bonuses paid.

authorized by defendants, as well as formalities such as written notice of annual shareholder meetings or formal elections and voting, were all waived by his failure to object or request compliance with the requirements of the corporations' bylaws or the Business Corporation Law (*see Matter of Flushing Hosp. & Dispensary*, 288 NY 125, 131 [1942]; *Kranich v Bach*, 209 App Div 52, 54 [1924]; *Winter v Bernstein*, 149 Misc 2d 1017, 1020 [1991], *mod* 177 AD2d 452, 453 [1991]; *see also* Business Corporation Law §§ 606, 711).

Nor do we find merit in plaintiff's claim that any attempt to challenge defendants' action would have been futile and his failure to object should be excused. There is nothing in this record that suggests plaintiff sought a formal shareholder vote on the bonuses or any other corporate business prior to 2001. Despite plaintiff's assertion to the contrary, there is no evidence in the record that John Tatko, Jr. owned or controlled a majority of the shares of Sheldon, and it is clear that either plaintiff or his brother would have needed the consent or acquiescence of Edna Tatko to control the affairs of either corporation. Thus, in view of plaintiff's ability to take control of the corporations in 2001 with his mother's cooperation, an attempt by plaintiff to require a formal shareholder vote prior to then cannot be said to have been futile. We also note that in his affirmation opposing defendants' motion, plaintiff states that, prior to 1999, he did not propose a vote on the bonuses because he had no knowledge of their amounts, rather than because it would have been futile to do so.

We also reject plaintiff's argument that he could not have waived his claims because a waiver must be knowing and defendants' failure to disclose corporate financial records kept him ignorant of the amounts of the bonuses being given. The record here shows that even if plaintiff was denied relevant financial records—and there is documentary evidence that he was not—his failure to take action to compel financial disclosure or reduce the amounts of the bonuses was voluntary. There is no evidence that, as a result of defendants' conduct, plaintiff was ignorant of his rights as a shareholder. While waiver requires the voluntary and intentional abandonment of known rights, it is established here by a failure to act that evinces an intent not to claim those rights (*see e.g. AXA Global Risks U.S. Ins. Co. v Sweet Assoc.*, 302 AD2d 844, 846 [2003]).

Finally, we have considered plaintiff's remaining contentions, including those regarding his claim that John Tatko, Jr. breached the shareholder agreement, and find them to be unavailing.

Crew III, J.P., Mugglin, Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, with costs.